IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SARAH BAREFOOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-223-SPS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Sarah Barefoot requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 40). She completed ninth grade and has previously worked as a fast-food worker (Tr. 29, 211). The claimant alleges she has been unable to work since February 28, 2019, due to chronic obstructive pulmonary disease (COPD), anxiety, depression, herniated disc in her back, scoliosis, and asthma (Tr. 19, 210).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 25, 2019. Her application was denied. ALJ Larry D. Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated March 25, 2021 (Tr. 17-30). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, that she could lift/carry ten pounds frequently and less than ten pounds occasionally, sit for six hours in an eight-hour workday,

and stand/walk for a least two hours in an eight-hour workday.  Additionally, he found she could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but that she could not climb ladders/ropes/scaffolds and she must avoid concentrated exposure to dusts, fumes, gases, odors, and poor ventilation.  Finally, he found she needed a cane to ambulate but that she could carry objects weighting up to ten pounds in her off hand (Tr. 22).  The ALJ thus concluded that although the claimant could not return her past relevant work, she was nevertheless not disabled because there was other work in the national economy that she could perform, *e. g.*, document preparer, filler, and semi-conductor bonder (Tr. 29-30).

## Review

The claimant's sole contention of error is that the ALJ failed to properly evaluate and account for a consultative examiner's opinion as to her mental impairments.  The Court finds this contention unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of morbid obesity, degenerative disc disease, scoliosis, asthma, and COPD, as well as the nonsevere impairments of right shoulder disorder, depressive disorder, anxiety, and learning disorder (Tr. 19-20). The medical evidence related to the claimant's mental impairments reflects that the claimant reported a diagnosis of depression and anxiety back in 2015 when she was seeking treatment for low back pain, and treatment notes regularly reflect major depressive disorder and anxiety as part of her listed diagnoses (Tr. 296-297, 300-367). From the alleged onset date of February 28, 2019 through September 30, 2019, treatment

notes reflect the claimant reported anxiety and depression at an initial appointment on March 18, 2019. At that time, she was diagnosed with a current mild episode of depressive disorder, unspecified whether recurrent, and was prescribed medication (Tr. 431-435). She was still taking her medication when she went in for an annual exam on June 12, 2019 but denied anxiety or depressed mood at that time (Tr. 426-429). On May 1, 2020, the claimant presented to Northwest Text Hospital with right shoulder pain. At that time, she denied anxiety and depression, and she did not list her previous mental health medication on her list of medications at that time (Tr. 524-525).

On March 6, 2020, Dr. Randall Rattan, Ph.D., conducted a mental status examination of the claimant (Tr. 456-460). During the exam, she discussed her history of medications for depression and anxiety and she endorsed historically experiencing a depressed and anxious mood, but Dr. Rattan noted that her symptoms appeared to be in partial remission due to a reported good work history and current social interests (Tr. 457). Dr. Rattan described her mood as "depressed/anxious" and her fund of information and remote memory were grossly intact, but her abstraction ability was likely below average based on responses to simple and moderately difficult similarities items and her attention and concentration were likewise likely below average (Tr. 459). He found she had fair insight (Tr. 459). Dr. Rattan diagnosed the claimant with unspecified depressive disorder, with anxiety, mild (partial treatment remission), and unspecified learning disorder (provisional), and he gave her a guarded prognosis based on her presentation at that time (Tr. 460). He found that the claimant appeared capable of carrying out basic instructions and exhibiting contextually appropriate behavior, but he stated that the claimant might have

some intermittent difficulty maintaining consistent employment from a mental health standpoint based on her own description of psychological symptoms combined with her functioning in various areas (Tr. 460).

State reviewing physicians determined initially and upon reconsideration that the claimant's mental impairments were nonsevere (Tr. 80-81, 93-95).

In his written opinion at step two, the ALJ found the claimant's depression was nonsevere and found either mild or no limitations in the four broad areas of mental functioning, citing, *inter alia*, to the claimant's own function report (Tr. 20-21). At step four, the ALJ thoroughly summarized both the claimant's administrative hearing testimony as well as the medical evidence of record, including a lengthy recitation of Dr. Rattan's report (and even repeating his conclusions twice at step four, *see* Tr. 26, 28). As relevant to this appeal, the ALJ noted the places in the record that included a diagnosis of depression and/or anxiety and the one-time prescription for medication, and also noted that the claimant had not undergone mental health treatment other than Dr. Rattan's consultative examination, nor had she been hospitalized for mental impairments (Tr. 23-29). The ALJ further noted that the claimant had good eye contact and normal mental status examinations in the records, and that there is no indication she provided insufficient effort during Dr. Rattan's exam (Tr. 27). The ALJ then found that the state reviewing physician opinions, *i. e.*, that the claimant's mental impairments were not severe, were persuasive and consistent with her lack of mental health treatment (Tr. 28). The ALJ particularly found not persuasive the portion of Dr. Rattan's assessment that the claimant might have some intermittent difficulty maintaining consistent employment from a mental health standpoint,

as it was not consistent with the overall lack of mental health treatment in the record (Tr. 28). As noted above, the RFC did not contain any limitations as to the claimant's mental impairments or the simplicity or complexity of work she could perform (Tr. 22). He then concluded that the claimant was not disabled (Tr. 29-30).

Here, the claimant asserts that the ALJ's reasons for rejecting Dr. Rattan's opinion are unsupported by the law. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally

well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of Dr. Rattan's opinion here was sufficient, if sparse in analysis.  At step four, the ALJ noted his assessment and findings repeatedly, and discussed the persuasiveness of his opinion, including the claimant's lack of treatment history.  On appeal, the claimant contends that this was error because a lack of treatment history does not mean the impairment does not exist or that there are not limitations.  She cites to *Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883-884 (10th Cir. 2010), when the Tenth Circuit ruled it reversible error where the ALJ found the claimant's mental impairments were nonsevere and did not consider them at steps four and five in the RFC determination.  But here, the ALJ thoroughly considered Dr. Rattan's opinion *throughout* the sequential evaluation and gave reasons for not including further limitations in her RFC.  And the claimant has pointed to no medical documentation not addressed by the ALJ that *does* provide further limitations.  Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").

Furthermore, the Court notes that Dr. Rattan's statement regarding the claimant having intermittent difficulty maintaining consistent employment is based largely on the claimant's own description of psychological symptoms, which the ALJ found inconsistent with the medical record and which finding is unchallenged on appeal.  The Court therefore

finds that the ALJ properly considered Dr. Rattan's opinion, along with all the other opinions in the record and in concert with the medical evidence, in accordance with the proper standards. The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform a limited range of sedentary work with the aforementioned limitations is well supported by substantial evidence. The Court therefore finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant further asserts that even if the ALJ did properly consider Dr. Rattan's opinion, the unskilled jobs identified at step five *do not* account for Dr. Rattan's limitation of the claimant to basic instructions because the reasoning level (*i. e.*, specific vocational preparation ("SVP")) of all three jobs identified (document preparer, DICOT § 249.587-018, SVP 2, reasoning level 3; filler/stuffer, DICOT § 731.685-014, SVP 2, reasoning level 2; semiconductor bonder, DICOT § 726.685-066, SVP 2, reasoning level 2) is too high. But the Court has already found that the ALJ did not err at step four in declining to include additional limitations as to her mental impairments and the RFC included no reasoning limitations. More importantly, the Court finds that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675,

684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). Thus, even if the document preparer job were eliminated for having a reasoning level of three, its identification at step five would be harmless error because the filler/stuff and semiconductor bonder jobs would remain.

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**